Filed 7/30/25  P. v. Crisostomo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>     v.<br><br>DANIEL CRISOSTOMO,<br><br>            Defendant and Appellant. | C101004<br><br>(Super. Ct. No. STK-CR-FE-2023-0008475) |

Evidence Code section 1108 permits admitting evidence of other sexual offenses a defendant accused of a sexual offense has committed to establish the defendant's propensity to commit such acts.  (*People v. Baker* (2021) 10 Cal.5th 1044, 1089.) (Statutory section citations that follow are to the Evidence Code unless noted otherwise.) The trial court has discretion to exclude the evidence under section 352 if it is unduly prejudicial.  (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823.)

Defendant Daniel Crisostomo appeals from his conviction of molesting a child. He contends the trial court erred by admitting evidence under section 1108 of two other

1

child molestations he committed approximately 15 years earlier.  He argues the evidence was inadmissible under section 352 because it was minimally probative and unduly prejudicial.

We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

A.      <u>Defendant's</u> <u>Molestation</u> <u>of</u> <u>K.B.</u>

Victim K.B. was born in 2008.  She was 15 years old at the time of trial and a sophomore in high school.  Defendant is the brother of a person K.B. called Uncle Jimmy.  K.B. is ethnically Filipino, and in the Filipino culture, it is common for an older person to be called uncle or aunt even if they are not related to the speaker.  K.B. referred to Jimmy and defendant as uncles for that reason.

K.B. recalled a Christmas party at her house when she was around 10 years old and in the fifth grade.  She was there with her younger sister A.B., a cousin named Kaitlin, her grandma and grandpa, Uncle Jimmy, and defendant.  Everyone was celebrating, and the adults were drunk.  K.B.'s parents had left the house earlier and were not at the party.

Defendant came into the kitchen where K.B. and A.B. were, and he started showing them his money.  He offered to buy K.B. anything.  K.B. ignored the offer because it didn't feel right.  She, A.B., and Kaitlin went to K.B.'s room.  They were having a sleepover.

Defendant came into K.B.'s room.  The three girls were lying on the floor because the bed was too small to fit all of them.  K.B. was wearing pajama pants and a T-shirt.  Defendant laid down next to K.B..  He told K.B., " 'Don't tell anyone or say anything.' " Then for several minutes he touched K.B.'s arms, breasts, thighs, and vagina over her clothes.  K.B. was shocked and did not know what to do.  She said nothing.

2

Defendant stopped touching K.B. and turned his attention to A.B. K.B. saw defendant touch A.B.'s legs and breasts. Again, K.B. said nothing because she did not know what to do. Defendant then left the room.

In her freshman year of school, K.B. had flashbacks and memories of the incident, and she disclosed it to a school counselor. The counselor contacted the police.

A.B. was born in 2010. She was 13 and in the eighth grade at the time of trial. She testified that defendant had been to her and K.B.'s home a total of four times. On one occasion, he picked A.B. up from school, took her to a toy store, and bought her toys. During the sleepover with K.B. and Kaitlin, A.B. saw defendant enter the bedroom, lie behind K.B., and touch K.B. on her "boobs." He tried to "go further down," but K.B. left the room. After touching K.B. for a "couple of minutes," defendant got up and laid down behind A.B. He reached out to touch her, but she got up and left the room, taking Kaitlin with her.

A.B. told her father what had happened a couple of days later. Her father was mad. Defendant did not come back to the house after the incident.

Fernando C., K.B.'s and A.B.'s father, stated that defendant's brother Jim lived with the family. His daughters treat Jim as a grandpa. One of his daughters told him that defendant had tried to touch both girls and had touched K.B. on her chest. Fernando recalled the disclosure happened in December 2020, but it was possible the disclosure occurred in December 2019 before COVID hit. It occurred around Christmas, as defendant had brought Christmas presents for everyone.

Hearing the disclosure, Fernando got mad. He told Jim to tell defendant not to come to the house anymore because if he saw defendant, he might kill him. Defendant never came back to Fernando's home. Fernando did not report the incident to the police. He spoke about it with his wife, and they decided just to let it go for the sake of their daughter's privacy.

3

B.    Section 1008 Evidence

The prosecution introduced evidence from witnesses whom defendant had molested years before. Miya was born in 1997. She remembered defendant as Uncle Dan, though he was not her biological uncle. She was half Japanese, half Filipino, and in the Filipino culture, it was typical for a child to call an adult male uncle. Defendant and Miya's father were best friends and would often drink together.

Miya visited defendant's house often. Defendant would have her and her sister, Hannah (who now goes by the name of Andrew) sit on his lap. Defendant would call them over to sit on his lap, telling them he would buy them ice cream and candy, offer them money, or offer to take them to the store. Every time Miya sat on defendant's lap at his request, defendant would put his hand between her legs and touch her vagina. This happened when Miya was six years old, and it occurred more than 10 times. It made Miya mad and scared because she knew it wasn't right. At some point, Miya disclosed the molestations to her cousin, who informed Miya's mother.

Andrew was born in 1998. Andrew also called defendant Uncle Dan even though defendant was not a biological uncle. Andrew recalled visiting defendant's residence "all the time" when Andrew was five years old, and Andrew's father and defendant would drink in the garage. Defendant would call Andrew and Miya over to sit on his lap. Defendant often offered gifts or money to get them to sit on his lap. Defendant would put his finger on Andrew's vagina with pressure, and it would hurt. He would stick his finger into the vagina, sometimes under clothes. It happened about five or six times. Andrew would try to get up or move, but defendant physically prevented Andrew from getting off his lap. After Andrew's mother found out, the police became involved, and Miya and Andrew testified in court.

Defendant was convicted in 2005 of two counts of committing a lewd or lascivious act on a child under the age of 14. (Pen. Code, § 288, subd. (a).) The

4

prosecutor in the current case introduced defendant's criminal record into evidence, as well as his two certified prior convictions in 2005. Defendant was incarcerated for those convictions.

C.     CSAAS Testimony

Licensed clinical psychologist Tiffany Anderson treats children who have experienced sexual abuse. Dr. Anderson explained that Child Sexual Abuse Accommodation Syndrome (CSAAS) is a concept that encompasses behaviors commonly seen in child victims of sexual abuse. It also dispels myths adults often believe about how children should behave after they have been abused. Five particular behaviors often seen in child sexual abuse cases that might appear to be counterintuitive are secrecy, helplessness, entrapment and accommodation, delayed and unconvincing disclosure, and retraction. The offenses often occur where there is an ongoing relationship between the victim and the perpetrator.

Dr. Anderson set forth different reasons why a child sexual abuse victim may delay disclosing the abuse or may never disclose it. The child will feel helpless to stop the abuse. As the abuse continues, the child may feel more shame, guilt, or responsibility for the abuse happening, and then fear they will get into trouble if they tell. The child may feel uncomfortable talking about the abuse and may not fully understand what is happening. They may not even have the words to describe the abuse because they have not been taught about sex.

D.     Defense

Defendant testified on his own behalf. His counsel directed him to speak in Tagalog and rely on an interpreter even though he was fluent in English. Defendant stated he visited his brother Jimmy four times while Jimmy lived with K.B. and A.B.'s family. The last time he visited their house was Christmas Eve, December 24, 2018. He was there from about 3:00 p.m. to 6:00 p.m. He brought gifts for all the family. The

5

girls' parents were not there. He spoke with the girls' grandparents and Jimmy in the garage. He saw the two girls outside when he arrived, but they went inside the house. He did not see them again. He did not talk with the girls at any time during the visit. He denied ever being alone with either of the girls or touching them.

### E. Verdict and Sentence

A jury found defendant guilty of one count of committing a lewd or lascivious act on K.B., a child under 14 years of age. (Pen. Code, § 288, subd (a).) In a bifurcated proceeding, the trial court found true allegations that defendant had two prior serious felony convictions for the same offense, and as a result he was a habitual sex offender. (Pen. Code, §§ 667, subd. (d), 1170.12, subd. (b); 667.71.)

Exercising its discretion under Penal Code section 1385, the trial court struck the two strike priors. It sentenced defendant to a prison term of 25 years to life pursuant to Penal Code section 667.71.

## DISCUSSION

Generally, evidence of a defendant's prior acts is not admissible to establish propensity. (§ 1101, subd. (a).) However, prior acts are admissible when relevant to prove some other disputed fact, such as intent, motive, plan, or identity. (§ 1101, subd. (b); *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 406.) Section 1108 carves out an exception to the general rule against propensity evidence. It renders admissible evidence of the defendant's commission of other sexual offenses in a criminal action where the defendant is accused of a sexual offense if the evidence is not inadmissible under section 352. (§ 1108.)

Section 352 authorizes a trial court in its discretion to exclude propensity evidence admissible under section 1108 if the evidence's "probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption

6

of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

Defendant contends the trial court abused its discretion when it did not exclude Miya's and Andrew's testimony under section 352. He argues the evidence had minimal probative value, and what value it had was significantly outweighed by the probability its admission would create substantial danger of undue prejudice, confusing the issues, or misleading the jury.

We review a trial court's admission of evidence under sections 1108 and 352 for abuse of discretion. (*People v. Daveggio and Michaud, supra*, 4 Cal.5th at p. 824.) We accord deference to a trial court's determination that the probative value of evidence admitted under section 1108 outweighs any danger of prejudice. (*People v. Dworak* (2021) 11 Cal.5th 881, 899.) A trial court has broad discretion under section 352, and we will not disturb its exercise of that discretion except on a showing it exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Id*. at pp. 899-900.)

When a trial court must determine whether evidence of a defendant's prior sexual offenses is unduly prejudicial under section 352, the court "must consider such factors as [the evidence's] nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.)

Presented with the prior offenses evidence in this matter, the trial court reasoned, "So we are talking about something that happened about 20 years ago. So a little bit

7

remote. But it's also fairly similar conduct. And 1108 was passed to allow this type of evidence in on these sexual assault cases. The conduct in the prior incidents, again, is not overly inflammatory or prejudicial. It's not a forcible rape or, you know, digital penetration. The conduct is very similar to the case that he's on trial for. So in doing a 352 balance, under both 1108 and 1101, I think this evidence comes in under 1108 to show propensity. And, again, I don't think it's too time-consuming or confusing. And under 1101(b), to show possible intent, lack of mistake. So I am going to allow the convictions to come in, as well as the live testimony.

"And the fact that the defendant was convicted of these prior incidents, you know, the jury won't -- you won't have to worry about the jury wanting to punish him for those prior ones because they'll know that he has already served his punishment for that. So that also makes it less prejudicial and also more probative, because there was a conviction. So I am going to allow it."

We conclude the trial court did not abuse its discretion in admitting Miya's and Andrew's testimony under sections 1108 and 352. The court reasonably found that the risk of undue prejudice did not outweigh the evidence's probative value. The evidence was relevant and had significant probative weight in showing propensity. The incidents were relatively similar to each other. Each involved defendant molesting his acquaintances' young daughters. In each case, defendant offered to buy the victims items or give them money and gifts. Defendant's offense against each victim consisted of unlawfully touching them over their clothing (and under their clothing at times in the case of Andrew) and did not proceed to more serious sexual offenses. This evidence was probative towards convicting defendant of the charged offense.

The trial court also reasonably determined the evidence was not unduly prejudicial under section 352. The prejudice referred to in section 352 is not the prejudice to a defendant than naturally flows from relevant, probative evidence. The term applies to evidence which uniquely tends to evoke in the trier of fact an emotional bias against the

8

defendant as an individual and which has very little effect on the issues. (*People v. Daveggio and Michaud, supra*, 4 Cal.5th at p. 824.) The court reasonably determined the probative value of the prior offense evidence was not substantially outweighed by the risk the evidence would create an emotional bias against defendant. The offenses were similar. There was no doubt defendant committed the priors, as they were documented in the certified convictions. There was little likelihood evidence of the prior offenses would confuse or mislead the jury or distract them from their primary inquiry, as the trial court instructed the jury on how it could consider and use the evidence distinct from evidence of the charged offense. And because defendant had completed his sentence for the prior offenses, there was little risk the jury would punish him again for those crimes.

Defendant contends the trial court erred admitting the evidence for various reasons. He asserts the evidence was not probative. Its similarity between the charged and prior offenses was "superficial" and present in most offenses prosecuted under Penal Code section 288, subdivision (a). Even the CSAAS expert witness stated there is often an ongoing relationship between the child and the adult, which contributes to the factors in the CSAAS analysis. Also, the victims were not particularly close in age.

Unlike under section 1101, subdivision (b), where to be admissible the prior acts must bear sufficient similarity, prior sexual offenses need not be sufficiently similar to be admissible under section 1108. " 'In enacting Evidence Code section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101.' [Citation.] Or, as another court put it, '[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' " (*People v. Loy* (2011) 52 Cal.4th 46, 63.) Because

9

defendant's actions against Miya and Andrew constituted sex offenses, the evidence did not have to be sufficiently similar to the charged offense to be admissible.

Defendant argues the prior acts were not probative because they were remote in time. He acknowledges that courts have admitted prior offenses under section 1108 that were committed more than 30 years prior to the charged offense. (See *People v. Branch* (2001) 91 Cal.App.4th 274, 277.) But in those cases, the similarities and the ongoing nature of the offenses weighed in favor of their admission. In another case, the defendant had lived a "blameless life" during the 23 years between the prior and current offenses, and that fact, coupled with the length of the 23-year gap, led the court to conclude the remoteness of the prior offense weighed strongly in favor of exclusion. (See *People v. Harris* (1998) 60 Cal.App.4th 727, 739.) In the present case, defendant has led a "blameless life" in the 15 years between the prior and current offenses. He contends the remoteness of the prior acts, given his otherwise clean record, reduced the prior acts' probative value.

Courts have not established specific time limits for determining whether a prior offense is so remote as to be inadmissible. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 992; *People v. Branch, supra*, 91 Cal.App.4th at p. 284.) But substantial similarities between the prior and charged offenses may balance out the prior offenses' remoteness. (*Branch,* at p. 285.) "Put differently, if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses." (*Ibid*.)

The substantial similarities between defendant's prior offenses and the current offense balance out the prior offenses' remoteness. The prior and current offenses involved defendant touching the victims' private areas over their clothes. In both sets of offenses, defendant used tactics to encourage the victims to have contact with him, such as offering them money or to buy items for them. In each case, defendant took advantage of the relationship he had with the victims' parent to gain access to the victims. The trial

court did not abuse its discretion by determining these similarities balanced out the prior offenses' remoteness.

Defendant asserts the prior offense evidence was less probative when the mere fact of the prior convictions was admissible under section 1108 and as impeachment evidence when he testified. Defendant contends the availability of this less prejudicial alternative weighed against admitting the prior offense evidence. But this argument ignores the relevance of the similarity of the facts of the prior offenses with the current offense to establish propensity.

Defendant argues that, even if the prior offenses evidence had probative value, the probative value was substantially outweighed by the probability the evidence's admission would create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. He contends the prior offenses evidence, consisting of multiple molestations of six-year-old Miya and five-year-old Andrew, was highly inflammatory compared to the facts of this case, a touching that occurred once on a 10-year-old child. The disparity in the victims' ages and the number of touchings would evoke an emotional bias against defendant.

The trial court did not abuse its discretion in finding otherwise. It was reasonable for the court to find that the victims in the charged and prior offenses were of sufficiently similar ages and experienced similar acts of abuse. The difference between a five- and six-year-old and a 10-year-old was not significant when the statute required the prosecution to establish only that the victim was under the age of 14. Those facts and the similarity in the types of abuse balanced out the disparity between the number of offenses committed in the prior and charged acts. Moreover, Miya and Andrew did not describe each offense committed against them. They simply explained defendant's particular method of abusing them and expressed how many times they believed it happened to them. This sufficiently minimized any undue prejudicial effect from the disparity in the number of offenses and the victims' ages in the prior and current offenses.

11

Defendant further argues that the prosecutor used the prior offenses evidence in an inflammatory way to raise the issue of race. Outside the presence of the jury, the prosecutor argued that the fact the victims were all Filipino was a similarity that weighed in favor of admitting the prior offenses evidence. In closing argument, the prosecutor said the jury knew that defendant was convicted of molesting "another set of Filipino sisters back in the early 2000s." Then, explaining how the jury could use the prior offenses evidence to find propensity, the prosecutor stated, "He [defendant] is targeting a younger group of females that he's connected with via family. Five -- five for Andrew. Six and seven for -- excuse me -- for Miya. I have to get all the names right. Eight years old when [A.B.] witnesses it. And then ten years old when [K.B.] actually experiences it. We have a certain age group only about five years. Filipino culture." The prosecutor noted that as in the prior offenses, in the current case, "there's kind of a familial or quasi-familial connection with the victims." Defendant contends the prosecutor in these statements improperly raised the issue of race and created a risk of emotional bias against defendant.

Defendant concedes he did not object at trial to the prosecutor's references to race. The lack of an objection on these grounds forfeits the argument here. (See *People v. Tully* (2012) 54 Cal.4th 952, 1021.) Even were we to consider the argument, we would find it lacks merit. The prosecutor's references to the victims' Filipino ethnicity and culture referred to the quasi-familial bond that existed between the victims, their parents, and defendant. The common element was that defendant took advantage of a position of trust bestowed on him in part by Filipino culture to attack his victims in the prior and current cases. Nothing in the prosecutor's comments would reasonably inflame a jury to be emotionally biased against defendant solely due to his ethnicity.

Defendant asserts the introduction of the prior offenses evidence consumed a prejudicial amount of time given the relatively short length of the trial. We have reviewed the record, and given the brevity of Miya's and Andrew's testimony, we

conclude the trial court did not abuse its discretion in finding their testimony did not consume a prejudicial amount of time.

Finally, defendant contends the admission of the prior offenses evidence violated his right to due process and rendered his trial fundamentally unfair.  The California Supreme Court, however, has consistently upheld section 1108 against a due process challenge.  This is because the statute allows trial courts to exclude unduly prejudicial evidence pursuant to section 352.  This discretion satisfies the requirements of due process.  (*People v. Baker, supra*, 10 Cal.5th at pp. 1089-1090; *People v. Falsetta, supra*, 21 Cal.4th at pp. 917-922.)  We are bound by the Supreme Court's rulings.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

For the reasons stated, we conclude the trial court did not abuse its discretion when it admitted evidence of defendant's prior sexual offenses under section 1108 and over defendant's objection under section 352.

DISPOSITION

The judgment is affirmed.

 

_____

HULL, Acting P. J.

We concur:

_____

ROBIE, J.

_____

MESIWALA, J.

13